**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOHN GULBANKIAN and ROBERT D. CALLAHAN, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>MW MANUFACTURERS, INC., a Delaware corporation,<br><br>      Defendant. | Case Number 1:10-CV-10392-RWZ<br><br>**FIRST AMENDED COMPLAINT**<br>**Leave to file granted on June 1, 2010**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs John Gulbankian and Robert D. Callahan ("Plaintiffs") file this class action complaint behalf of themselves and all others similarly situated, by and through the undersigned attorneys, against MW Manufacturers, Inc. (hereinafter "MWM" or "Defendant"), and states as follows:

**INTRODUCTION**

1.    This is an action on behalf of the Plaintiffs, and a class of all others similarly situated against the Defendant MWM, the manufacturer of defective windows marketed under the name "MW Windows" (hereinafter "MW Windows"). These windows are defective, as they are prone to chronic leaking following installation. As a result of Defendant's failure to properly design, develop, test, manufacture, distribute, market, sell, and ensure that the windows were properly designed, Plaintiffs' windows are failing, causing them to suffer damages.

2.    Defendant warrants and advertises that its windows require low or no maintenance and are long lasting.

3.    Defendant, however, refuses to honor its purported 10 or 20-year or lifetime warranties because the leaking is allegedly not due to any "defect."

4.    The Defendant is responsible and liable for, among other things, the costs of removing and replacing the windows installed in the homes, offices, buildings and other

structures of Plaintiffs and members of the proposed class, as well as other related consequential damages that resulted from Defendant's defective windows that have failed.

## PARTIES

5. Plaintiff John Gulbankian is a resident of Southborough, Massachusetts. He purchased a modular home from Excel Homes, in which MWM's Freedom Series vinyl-clad windows were installed. The home was delivered in 2002.

6. Plaintiff Robert D. Callahan is a resident of Melrose, Massachusetts. He purchased a modular home from Chelsea Modular Builders, Inc., in which MWM's Freedom Series vinyl-clad windows were installed. The home was delivered in 2006.

7. MWM is incorporated in Delaware and has its principal place of business in Rocky Mount, Virginia. MWM is a wholly owned subsidiary of PlyGem Holdings, Inc., a Delaware corporation with its principal place of business in Cary, North Carolina. MWM does business throughout Massachusetts and the United States. It manufactured, warranted advertised and sold the defective windows that were installed on Plaintiffs' homes and those of thousands of putative class members in Massachusetts and the United States.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the Plaintiffs and Defendant are of diverse citizenship and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00) exclusive of interest and costs.

9. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred, a substantial part of the property that is the subject of this action is situated, and Defendant is subject to personal jurisdiction, in this District.

10. As a result of Defendant's designing, testing, developing, manufacturing,

marketing, distributing, promoting and/or selling, either directly or indirectly through third parties or related entities, of windows to purchasers throughout Massachusetts, the Defendant obtained the benefits of the laws of Massachusetts and profited from Massachusetts commerce.

11. Defendant conducted systematic and continuous business activities in and throughout the State of Massachusetts through the sale and marketing of window products in the State of Massachusetts, and otherwise intentionally availed itself of the markets of the State of Massachusetts through the promotion and marketing of its business.

## **FACTUAL ALLEGATIONS**

12. Upon information and belief Defendant is, and at all times relevant hereto was, engaged in the business of designing, developing, manufacturing, distributing, marketing, selling, and installing windows and doors in the State of Massachusetts and throughout the Eastern United States. Defendant (and/or its predecessors) has been in the business of manufacturing windows since approximately 1939.

13. Defendant has manufactured, advertised, sold and distributed the defective windows since (at least) the early 1990s.

14. The Windows were touted by the manufacturer and its sales representatives or agents as offering "maximum protection against the elements."

15. Defendant uses, and has used, different names for its various lines of Windows, including referring to them as Mira Premium Series, Select Series, Freedom Series, Insulate Pro Series, MW Pro Series, Classic Series, TwinSeal Series, Builder Series and Patriot Series. Upon information and belief, the most popular models fall within the "Freedom Series" of windows, a line of windows with wood frames, and available with vinyl-clad wood, and all-vinyl, sashes.

16. Defendant was negligent in the design and manufacture of the Freedom Series windows (the "Windows") for a number of reasons,

17. MWM's Freedom Series windows are plagued by design flaws that prevent them from being properly sealed.

18. Water leaks through the window frame, causing the window sill, and other wood

portions of the windows, to rot.

19. The Windows are also plagued by additional design flaws that causes water to drain *into* the home, rather than outside, and the vinyl portions of the windows fail to continue to adhere to the wood portions, exposing the wood portions to the elements and causing them ultimately to rot.

20. Defendant knew or should have known that the foregoing defects made the Windows susceptible to premature failure through various processes.

21. Defendant's design and materials choices have created a product that begins to fail on its first day of use, even if perfectly installed in its intended environment.

22. Because of the defective design and manufacture, Defendant's Windows failed in their intended purpose.

23. Because of the defective design and manufacture, Defendant's Windows are inherently defective and are substantially certain to fail within the express warranty provided by Defendant and/or the useful life of the Windows.

24. Defendant's warranty expressly states that its products shall be "free from manufacturing defects in materials and workmanship."

25. Persons or entities that own the Windows have already or are in the process of failing prematurely and thus have suffered or are reasonably certain to suffer actual injury well in advance of the warranted and expected life of their windows.

26. Despite customer complaints, Defendant failed to implement any changes to its Windows or warranty procedures to remedy the defects.

27. The following represents a small sample of internet postings by MWM product purchasers and installers' general frustrations with the defective Windows:

> At less than one year of age my house had leaking M&W windows. Contractor left the state (TN) rather than finish house. At 3.5 years now I have significant rot in three rooms (on different sides of house) involving 16 windows. Is [there] a remedy to stop the leaks? I have tried 2 paid contractors and three times on my own to stop the leaks. What is the problem?

I'm glad I found this forum. Last week I noticed that the vinyl clad portion of several of our MW windows are cracking/bubbling. I'm going to contact MW and try to use the warranty route but after reading the posts listed on this forum I would definitely participate in a class action lawsuit if it were available.

I've got a double casement, MW window. One of the frames of the window is completely rotted at the bottom. It's 6 yrs old. I've got MW side windows on each side of the front door, again 6 yrs old, where the side seals have sucked into the windows.

WE JUST PURCHASED A NEW HOME IN NORTH CAROLINA. IN LESS THAN A YEAR OUR WINDOW SASH[E]S WERE SWOLLEN IN THE CORNERS AND A WALL IN THE GARAGE WAS MOLDED. A MW WINDOW REPRESENTATIVE CAME TO THE HOUSE AND VERIFIED THE DAMAGE WAS CAUSED BY A FLAW IN THE DESIGN OF THE WINDOWS, 18 OUT OF 20 LEAKED. HE DID A QUICK FIT BY CAULKING THE CORNERS AND INDICATED WE WOULD HAVE NO FURTHER PROBLEMS. I DON'T BELIEVE A QUICK FIX IS THE ANSWER. MW WINDOW WARR[A]NTY OFFICE WILL NOT ANSWER THE PHONE NOR RETURN ANY CALLS LEFT BY MESSAGE TO DETERMIN[E] WHO IS GOING TO MAKE THE REPAIRS CAUSED BY THE[IR] DEFECT.

MW windows are terrible the v wood windows I have the sills are warped don't close aren't air tight and dealing with the company is useless.have had the area rep come and try to fix them he even suggested to put storm windows on them.

Don't let him use them. My windows are only 5 years old and are separating by 3/16" on one side for 13 or my 29 windows. My builder with 45 years installing has never seen problem like this. MW claims install problem but Building supply where I bought them say it is a common problem. Will not do a thing for them either.

Stay away from MW.........

Well I think you're wrong. We just bought a newly built home with MW Windows, they are warped 1/2 of them do not close properly, and leak terribly and have only lived in our house for less than a month. We were told by the builder that these were great quality windows. Wished we did our reseach before the purchase on this home and these windows!!!! We are going to ask for them to be replaced and ask the township building inspectors to back us up on this request, or we are going to court!

> Brand new MW windows in 2005. Problems every year. Sashes have been replaced every year. With the same problem vinyl bubbles up off the wood. My dream home has been a nightmare. I sincerely mean this. I'm so sorry for anyone who has to go through this. My thoughts and prayers are with you

> Our builder used these for new home in SC. They are the Classic brand double hung window. They have a design defect. They leak water onto the wood seal. I am sure thousands of homes have these defective windows.

> Our home has brick veneer but these poor windows don't use brick molding. Walk away from buying home that uses windows without brick molding. If the home uses MW windows walk away. Don't trust the realtor when they say there is a warranty. Its not worth the paper it is printed on.

**Inadequate Testing of MW Windows**

28. Defendant did not test the Windows in their anticipated environments before selling those Windows to the public.

29. Defendant conducted inadequate testing on the Windows and failed to test for things that they knew or should have known would lead to premature failure of the Windows.

30. Defendant failed to investigate or test whether well-known and expected water conditions would lead to premature failure of the Windows.

**False Advertising of MW Windows**

31. Defendant falsely advertised that the Windows were reliable despite failing to test and determine the reliability of its product when used in real world conditions.

32. Defendant represented that its Freedom Line of windows provided "maximum protection against the elements," and were "free from manufacturing defects in materials and workmanship."

33. Defendant further represented that its vinyl-clad windows were "high quality," and that they offer a "low-maintenance exterior that will allow [homeowners] to have more free time to live life in style."

34. Defendant further represented that, on its vinyl-clad windows, "[w]eather-stripping on the bottom of each sash & on the window opening form a perimeter seal creating an air and water barrier."

35. Defendant also falsely represented that it offered "superior" service, when, in fact, it customarily refuses legitimate claims expressly covered by its warranties.

36. Defendant also falsely marketed its Windows:

   (a) as being safe and reliable;

   (b) as being proven, time-tested and low maintenance;

   (c) as being extensively tested, and that based on the results of those tests, the MW Windows were properly designed, developed, marketed, and manufactured so as to perform adequately, reliably and as represented; and

   (d) as being superior to the products offered by competitors.

37. Defendant and its authorized agents and distributors made each of the above described assertions, statements, representations and warranties with the intent and purpose of inducing suppliers, builders, and consumers to purchase and install the Windows in residential and commercial structures in the State of Massachusetts and elsewhere.

38. Defendant also made numerous material omissions in its literature and uniformly withheld important information relating to the design, reliability and performance of the Windows.

39. Had Defendant not withheld and omitted important information about the design, reliability and performance of the Windows, Plaintiffs and the members of the Class would not have purchased those products and/or installed them in their properties.

**Plaintiff Gulbankian's Windows**

40. As noted above, Plaintiff Gulbankian purchased a home in which MWM's Freedom Series windows were installed.

41. Plaintiff Gulbankian's builder purchased the Windows believing them to be a quality product and free of any major defects.

42. Within two years of installation, Plaintiff Gulbankian first noticed that the windows were leaking in numerous locations, permitting drafts, and more importantly, permitting moisture to enter, and collect, on the interior of the house.

43. The problem has rapidly worsened in the months and years since. Moisture has damaged the wood frames of the windows, and moisture and drafts continues to enter the home.

44. The deterioration of Plaintiff Gulbankian's windows will eventually become a safety concern.

45. Between 2003 and 2009, MWM engaged in a course of deception designed to conceal from Plaintiff Gulbankian the fact that his windows were defective, representing to him orally, and in writing, that the failures were due solely to improper installation, and that Plaintiff's windows were not defective. It was not until 2008, after Plaintiff Gulbankian had consulted with a carpenter who opined that the windows themselves were defective, and had learned of the existence of complaints of other owners of the Windows, that he discovered that the Windows suffered from design and/or manufacturing defects.

**Plaintiff Callahan's Windows**

46. Plaintiff Callahan purchased a modular home from Chelsea Modular Homes, Inc. that was delivered in 2006.

47. The builder installed several double hung windows from MW Manufacturers' Freedom Series in the home.

48. Leaking later became evident from certain of the windows.

49. Leaking is evident from the two front windows on the dormered second floor of the house, as these windows are situated above an unfinished crawl space. Water leaks through the windows, passes through the crawl space, and through the ceiling to the room below. The leaking has caused damage to the interior of the home.

50. The builder attempted to remedy the problem, but was unable to solve the leaking problem.

51. The builder has attempted to obtain assistance from MWM, but MWM has refused to acknowledge the problem or offer any relief to Plaintiff Callahan.

**Defendant's Warranty Misconduct**

52. Defendant's Windows were uniformly sold without any limitations of warranties because Defendant and/or its distributors failed to provide any alleged warranty limitations or disclaimers at the time of the sale of the Windows.

53. Defendant did not provide any alleged warranty disclaimers or limitations at the time of sale of the windows used by Plaintiffs.

54. Defendant did not provide any alleged warranty disclaimers or limitations at the time of sale of the windows used in the structures of any of the members of the Class.

55. As a result, Defendant knew that they were legally obligated to compensate all suppliers, builders, and consumers for their full measure of damages arising out of the failures of the Windows.

56. In response to the claims of its customers, Defendant had adopted a uniform company policy not to pay customers their full measure of damages.

57. Defendant's executives condoned this misconduct because the flood of warranty claims Defendant have received were not included in Defendant's "cost structure" for Window sales.

58. Beginning in at least 2000, Defendant has received numerous claims and reports that the Windows that it was manufacturing, distributing and advertising were subject to premature failures, problems and deterioration.

59. Despite the fact that Defendant knew its product was defective and that its Windows would not perform as advertised, warranted or otherwise expressly represented, Defendant continued to sell the product to the public without correction.

60. In fact, MWM has engaged in course of deception designed to fraudulently conceal from consumers the fact the Windows are plagued with design and/or manufacturing defects, and routinely and systematically blames window failures on allegedly improper installation  Defendant continues to conceal from the public the fact that the Windows were defective, not durable and would begin to fail immediately upon being placed into service.

61. Because installation of the Windows relates to the habitability of persons' homes, Defendant had a duty to consumers and to the public to disclose the defective nature of its Windows and not to conceal and suppress the defective nature of the product from the Plaintiffs and members of the Class.

62. Defendant, however, has engaged in a scheme to cover up the true nature of the problem with the Windows.

63. Defendant, well aware of the magnitude of the problem, has denied warranty claims blaming the premature failures on improper installation by builders and contractors.

64. Defendant knew the cause of the premature failures was not improper installation, and has fraudulently concealed and suppressed from the Plaintiffs and Class the true nature of the problems with Windows.

65. To date, Defendant continues in this pattern of concealment and suppression by deliberately and knowingly misrepresenting to the public the true nature of the problems with the Windows.

## CLASS ACTION ALLEGATIONS

66. Plaintiffs seek to bring this case as a class action, pursuant to Rule 23 of the Federal Rules of Procedure. The proposed class (the "Class" or the "National Class") is defined as follows:

> All individuals and entities that have owned, own, or acquired homes, residences, buildings or other structures physically located in the United States, in which the Freedom Series of MW Windows are or have been installed since 1990. Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest of Defendant, and Defendant's legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

Additionally or alternatively, Plaintiffs propose a class or subclass (the "Massachusetts Subclass") defined as follows:

> All individuals and entities that have owned, own, or acquired homes, residences, buildings or other structures physically located in the State of Massachusetts, in which the Freedom Series of MW Windows are or have been installed since 1990. Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest of Defendant, and

Defendant's legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

**Numerosity**

67.    Defendant has harmed and continues to harm the homes, offices, buildings and other structures through the installation of their MW Windows. The members of the proposed Class are so numerous that joinder of all members is impracticable.

68.    The exact number of Class members is unknown as such information is in the exclusive control of Defendant. However, due to the nature of the trade and commerce involved, Plaintiffs believe the Class consists of thousands of consumers, making joinder of Class members impracticable.

**Common Questions of Law and Fact**

69.    Common questions of law and fact affect the right of each Class member and a common relief by way of damages is sought for the Plaintiffs and Class members.

70.    The harm that Defendant has caused or could cause is substantially uniform with respect to Class members. Common questions of law and fact that affect the Class members include, but are not limited to:

   (a)   Whether Defendant sold and entered a defective product into the stream of commerce in Massachusetts and other states in violation of Mass. Gen. Laws. Ann. ch. 106, §§2-314 to 318 (sales), §§2A-212 to 2A-216 (leases) (West 2000);

   (b)   Whether Defendant failed to prevent damages which occurred because of the defective product it designed, manufactured and sold into the stream of commerce;

   (c)   Whether Defendant failed to warn consumers about the reasonably foreseeable dangers of using the Windows;

   (d)   Whether Defendant was unjustly enriched by the sale of the defective product;

   (e)   Whether Defendant breached the 10 and 20-year warranty it represented as existing and engaged in fraudulent, false, deceptive and /or misleading misconduct with respect to the handling of warranty claims;

   (f)    Whether Defendant omitted material information when it sold the

        Windows;

  (g)    Whether the members of the Class have sustained damages and, if so, the proper measure of such damages.

**Typicality**

71.    The claims and defenses of the representative Plaintiffs are typical of the claims and defenses of the Class.

**Adequacy of Representation**

72.    The representative Plaintiffs will fairly and adequately assert and protect the interests of the Class:

  (a)    They have hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the class; and

  (b)    They have no conflict of interest that will interfere with the maintenance of this class action.

**Superiority**

73.    A class action provides a fair and efficient method for the adjudication of controversy for the following reasons:

  (a)    The common questions of law and fact set forth herein predominate over any questions affecting only individual class members;

  (b)    The Class is so numerous as to make joinder impracticable. However, the Class is not so numerous as to create manageability problems. There are no unusual legal or factual issues which would create manageability problems;

  (c)    Prosecution of a separate action by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct;

  (d)    Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests;

  (e)    The claims of the individual Class members are small in relation to the expenses of litigation, making a Class action the only procedure in which class members can, as a practical matter, recover. However, the claims of individual Class members are large enough to justify the expense and effort in maintaining a class action.

**COUNT I**
**(Breach of Express Warranty)**

74. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

75. The express statements, assertions, marketing materials, and representations by Defendant concerning the MW Windows as set forth above constitute express warranties.

76. The express warranties provided by Defendant include warranties that it would provide a 10-year parts and workmanship warranty and a 20-year insulating glass warranty on all windows, and a lifetime parts and workmanship warranty on vinyl windows.

77. Defendant failed to provide defect-free windows and/or materials, and failed to inspect and identify windows and/or materials with defects.

78. But for the manufacturing defect, design defect, selection of improper materials, and/or the breaches of duty by Defendant, the Class would not have sustained damages.

79. As a result, Defendant breached such express warranties by providing defective windows or materials that have or are reasonably certain to fail well before the 10/20-year warranty or useful life of the product.

80. Upon discovery of the defective Windows installed, Plaintiffs have brought this Complaint to give notice to Defendant of Plaintiffs' claims including breach of express warranties made by Defendant to Plaintiffs and consumers at large.

**COUNT II**
**(Breach of Implied Warranty)**

81. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

82. Defendant designed, developed, manufactured, distributed, and marketed the Windows for purposes of their eventual sale to retail buyers.

83. Defendant impliedly warranted that the MW Windows were properly designed, developed, manufactured, distributed, marketed, sold, and installed and that the designs and materials were proper and of first-class and workmanlike quality.

84. Plaintiffs and the Class relied upon said warranties and the claimed skill, expertise and quality assurance of Defendant workers to provide suitable goods.

85. Defendant breached said warranty by failing to provide adequate and proper designs, calculations, and/or materials for the Windows.

86. Defendant failed to provide defect-free windows and/or materials, and failed to inspect and identify windows and/or materials with defects.

87. But for the Defendant's breach of implied warranty, the Plaintiffs and the Class would not have sustained damages.

88. Upon discovery of the defective MW Windows installed within homes, Plaintiffs have brought this Complaint to give notice to Defendant of Class Plaintiffs' claims, which include breach of implied warranties made by Defendant to Plaintiffs and Class members.

## COUNT III
### (Unjust Enrichment)

89. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

90. Defendant, through deliberate misrepresentations or omissions in connection with the advertising, marketing, promotion, and sale of the MW Windows, reaped benefits, which resulted in Defendant's wrongful receipt of profits. Accordingly, Defendant will be unjustly enriched unless Defendant is ordered to disgorge those profits for the benefit of Plaintiff and the Class.

91. Equity demands disgorgement of the Defendant's ill-gotten gains.

92. As a result of Defendant's wrongful conduct, Plaintiffs and the Class are entitled to restitution from and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendant.

## COUNT IV
### (Negligent Misrepresentation)

93. Plaintiffs incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

94. In making material misrepresentations of material facts regarding the characteristics and capabilities of the MW Windows through its advertising and product information and through its internet website that were in fact untrue, Defendant knew or should have known they were misrepresenting material facts and that the Plaintiffs and Class would be relying on Defendant's representations to their detriment and damage.

95. In concealing material facts regarding the characteristics and capabilities of the Windows, Defendant knew or should have known they were not disclosing material facts and that the Plaintiffs and the Class would be relying on Defendant's representations to their detriment and damage.

96. Plaintiffs and the Class were unaware of the falsity of Defendant's representations, and as a result, they justifiably relied on them in purchasing and/or installing the Windows.

97. Defendant made the false representations in the course of its business with the intent that the Plaintiffs and Class would rely on them and purchase and/or install the MW Windows.

98. As a direct, proximate and foreseeable result of Defendant's failure to fully disclose material facts and its misrepresentations of material fact, Plaintiffs and the Class suffered damage.

99. As a result of Defendant's misconduct, Plaintiffs and the Class have suffered actual damages in that they purchased and installed in their homes defective Windows.

100. As a result of Defendant's misconduct, Plaintiffs and Class will suffer damages that include not only the full cost to attempt to clean but, ultimately, to replace windows or materials, but also include, without limitation, consequential and incidental damages.

101. As a direct, proximate and foreseeable result of Defendant's negligent misrepresentations, the Plaintiffs and the Class sustained damages in and amount to be determined at trial.

## COUNT V
### (Negligence)

102.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

103.    Defendant owed a duty to Plaintiffs and members of the class to exercise reasonable care in the design, manufacture, quality control and marketing of the window products.

104.    Defendant breached its duty to Plaintiffs and the Class by designing, manufacturing, selling, advertising and warranting a defective product to Plaintiffs and the Class, and by failing to take those steps necessary to repair or otherwise discontinue selling a defective product to consumers.

105.    Defendant was aware, or reasonably should have been aware, that the window products were defective and did not perform their intended use.

106.    When they purchased the window products, Plaintiffs and the Class were not aware of their defective nature.

107.    As a direct and proximate cause of the foregoing, Plaintiffs and the Class have suffered have suffered and will continue to suffer damages and economic loss described fully above, in an amount to be proven at trial.

108.    Plaintiffs and the Class are entitled to damages in an amount to be determined at trial.

## COUNT VI
### (Implied Warranty of Merchantability)

109.    Plaintiffs incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

110.    At all times during the Class period, MW Windows was a commercial manufacturer and supplier of the window products at issue in this case.

111.    Defendant's windows were expected to, and did in fact, reach consumers without

substantial change in the condition in which they were supplied.

112. Under Mass. Gen. Laws. Ann. ch. 106, §§2-314 to 318 (sales), §§2A-212 to 2A-216 (leases) (West 2000), Defendant's windows were and are defective, and were and are unfit for their intended use.

113. The window products fail to perform in accordance with the reasonable expectations of Plaintiff and the Class and the benefits of the design of the windows does not outweigh the risk of their failure.

114. Defendant has/had a duty and responsibility to disclose to the consuming public the foreseeable risks associated with the use of its window products. MW Windows further has/had a duty not to put defective products on the market.

115. Defendant breached its duty to Plaintiffs and the Class by failing to disclose the defects associated with the window products, and by allowing the sale and use of the windows products when they knew they would not perform as intended.

116. As a result of the foregoing, Plaintiffs and the Class have suffered damages as previously set forth herein that were directly and proximately caused by the defective windows products.

117. Plaintiffs and the proposed Class are entitled to damages in an amount to be determined at trial.

**COUNT VII**
**(Violation of The Massachusetts Consumer Protection Act, M.G.L. c. 93A §§ 2 and 9)**
**(solely on behalf of Plaintiffs and the Massachusetts Subclass)**

118. Plaintiffs incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

119. The foregoing course of conduct constitutes unfair or deceptive trade practices in violation of M.G.L. c. 93A, § 2.

120. Plaintiffs made demand upon MWM pursuant to M.G.L. c. 93A § 9(3), but MWM has not made a satisfactory offer of relief.

121. Plaintiffs and the proposed Massachusetts Subclass are entitled to damages in an amount to

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action and for judgment to be entered upon MW Manufacturers as follows:

1. For economic and compensatory damages on behalf of Plaintiffs and all members of the Class;

2. For restitution;

3. For actual damages sustained or treble damages;

4. For punitive damages, as otherwise applicable;

5. For injunctive and declaratory relief, as claimed herein;

6. For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

7. For such other and further relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by Jury on all issues so properly triable thereby.


June 3, 2010                    CUNEO, GILBERT & LADUCA, LLP

                                              /s/ Matthew E. Miller
                                      Matthew E. Miller, BBO No. 559353
                                      Charles J. LaDuca, *pro hac vice*
                                      507 C Street NE
                                      Washington, DC 20002
                                      Telephone:  202-789-3960

                                      LEVIN, FISHBEIN, SEDRAN & BERMAN
                                      Charles E. Schaffer, *pro hac vice*
                                      510 Walnut Street, Suite 500
                                      Philadelphia , Pennsylvania 19106-3697
                                      Telephone: 215-592-1500

AUDET & PARTNERS, LLP
Michael McShane, *pro hac vice*
Audet & Partners, LLP
221 Main St., Suite 1460
San Francisco, CA 94105
Telephone: 415-568-2555

LOCKRIDGE GRINDAL NAUEN PLLP
Robert K. Shelquist, *pro hac vice*
Craig S. Davis, *pro hac vice*
Matthew B Johnson, *pro hac vice*
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
Telephone: 612-339-6900

HALUNEN & ASSOCIATES
Clayton D. Halunen, *pro hac vice*
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: 612-605-4098

*Attorneys for Plaintiffs*