UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-10392-RWZ

JOHN GULBANKIAN, et al.

v.

MW MANUFACTURERS, INC.

MEMORANDUM OF DECISION

December 29, 2014

ZOBEL, D.J.

After review of the objections and record, the court certifies the Settlement Class under Federal Rule of Civil Procedure ("FRCP") 23(b)(3), and approves the class settlement under Rule 23(e) as it is fair, reasonable, and adequate.

## I. Facts

This is a national class action against defendant, MW Manufacturers, Inc. ("MW"), for breach of warranty for its vinyl-clad windows. The windows in question were those known as Freedom, V-Wood, Freedom 600, and Freedom 800. These windows are constructed of wood coated with PVC (vinyl). MW manufactured Freedom windows from 1987 to 2003, V-Wood windows from 1995 to 2006, Freedom 600 from 2006 to the present, and Freedom 800 windows from 2003 to the present.

Plaintiffs allege that each of these lines of windows suffer from a common design

defect: a gap in the vinyl where the window jamb meets the window sill that allows water to penetrate into the window, causing water damage and, ultimately, rot. Plaintiffs also contend that MW failed to properly test the windows and falsely advertised and marketed them. Defendant disputes all of these allegations. Experts from both sides have produced conflicting testimony regarding the design and performance of the windows.

MW provided warranty coverage for the windows through two uniform written warranties relevant to the claims in this suit. The first covered windows produced from the introduction of the products until 1998; the second, for windows produced since 1998. The warranties guaranteed the original homeowner who purchased the product that the windows would be free from manufacturing defects in materials and workmanship for a specified length of time for each warranty, one year or ten years.

This case has been extensively litigated since its inception in 2010. The parties have produced thousands of pages of documents, conducted over a dozen depositions of fact witnesses and multiple expert depositions. There have been numerous contested motions to compel and challenges to portions of each side's expert testimony.

After the close of discovery, the parties engaged in several rounds of mediation with Professor Eric Green of Resolutions, LLC, an experienced and well-qualified mediator, which eventually resulted in the proposed Settlement Agreement ("Agreement"). Notice was provided to the Settlement Class after Preliminary Approval of the settlement, and this motion followed.

## II. Standard

Under Rule 23(e)(2), a class settlement must be fair, reasonable, and adequate. The First Circuit has not established a fixed test for evaluating the fairness of a settlement. New England Carpenters Health Benefits Fund v. First Databank, Inc., 602 F.Supp.2d 277, 280 (D. Mass. 2009). There is no single litmus test for a settlement's approval; it is instead examined as a gestalt to determine its reasonableness in light of the uncertainty of litigation. See Bussie v. Allmerica Fin. Corp., 50 F.Supp.2d 59, 72 (D. Mass. 1999).

The courts of this district have frequently used the factors articulated by the Second Circuit to examine the fairness of settlements:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

New England Carpenters Health Benefits Fund v. First DataBank, Inc., 602 F. Supp. 2d 277, 280 81 (D. Mass.), aff'd sub nom. Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund, 582 F.3d 30 (1st Cir. 2009) (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974).

Where the settlement was the product of arms-length negotiation following extensive discovery, its fairness is presumed. In re Pharm. Indus. Average Wholesale Price Litig., 588 F.3d 24, 32-33 (1st Cir. 2009); In re Celexa & Lexapro Mktg. & Sales Practices Litig., No. MDL 09-2067-NMG, 2014 WL 4446464, at *5 (D. Mass. Sept. 8,

3

2014).

## III. Discussion

Upon consideration of the submissions of the parties and the evidence presented at the final fairness hearing, the court finds the Proposed Settlement Agreement to be fair, reasonable, and adequate. The Settlement Agreement is presumptively reasonable because it was the product of arms-length negotiations following extensive discovery. Pharm. Indus. Average Wholesale Price Litig., 588 F.3d at 32-33. Even if the settlement were not presumed reasonable, it satisfies all of the factors of reasonableness generally relied on in this court.

### A. Complexity, Expense, and Likely Duration of Litigation

The first factor to examine is the complexity, expense, and likely duration of litigation. Continued litigation here would be expensive, exceedingly complex, and above all protracted. Even without accounting for delays caused by appeal of any class certification order, there are difficult issues of proof and substantial costs and time involved in preparation for and execution of a trial. All of that additional cost would accrue without any guaranty of benefit to the plaintiffs. These facts militate in favor of settlement.

### B. Reaction of the Class to the Settlement

The reaction of the class has been overwhelmingly positive. Reaction to a settlement is positive when the number of objectors is minimal compared with the number of claimants, provided notice effectively reached absent class members. In re Lupron Mktg. & Sales Practices Litig., 228 F.R.D. 75, 96 (D. Mass. 2005).

Eleven thousand, seven hundred eighteen (11,718) notice packets were disseminated by United States Mail. Only 19 Settlement Class Members elected exclusion from the class, and only three Settlement Class Members have timely objected to the proposed terms. All of those objectors are clients of a firm competing for control of the litigation. See In re Lupron, 228 F.R.D. at 96 (D. Mass. 2005) (citing In re Prudential Ins. Litig., 148 F.3d 283, 318 (3d Cir. 1998) (in assessing the weight of objections to class settlement agreements, the district court may properly consider the fact that the most vociferous objectors were persons enlisted by counsel competing with MDL counsel for control of the litigation). Of the 56 State Attorneys General and other United States federal officials notified of the Agreement under the Class Action Fairness Act, 28 U.S.C. § 1717(c)(1), none have objected. The class response has been positive.

### C. Extent of Discovery

There was extensive and well-developed discovery leading to the Agreement. Multiple motions to compel production of documents and exclude expert testimony were filed, all heavily contested. Plaintiffs conducted over a dozen depositions, including MW's corporate representatives, the named plaintiffs and their spouses, and three expert witnesses, each of whom was deposed twice. Over 130,000 pages of documentation were produced. There is no doubt the parties fully understand the legal and factual circumstances and are well situated to make informed decisions in the settlement context.

### D. Risks of Establishing Liability and Damages

5

In evaluating a settlement agreement, the court weighs the likelihood of success on the merits against the amount and form of relief offered in the settlement. Santana v. Colazo, 714 F.2d 1172, 1175 (1st Cir. 1983) (citing Carson v. Am. Brands, Inc., 450 U.S. 79, 88 n. 14 (1981)). Plaintiffs face difficult issues of proof, including maintenance of class status throughout trial, despite substantial individualized installation and environmental issues that would be raised at trial in defense. The litigation has thus far been contentious and, presumably, expensive, and there is no reason to believe it would not continue to be so should settlement fail. Settlement thus avoids substantial risks and costs for both sides, giving a certain positive outcome in the face of a costly and uncertain one.

### E. Class Counsel's Representations

"When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight." Rolland v. Cellucci, 191 F.R.D. 3, 10 (D. Mass. 2000). Class Counsel here are attorneys with extensive experience in consumer and building product class action litigation, and they insist that this Agreement is fair, reasonable and adequate. I give significant weight to this representation. Id.

### F. Adequacy of Compensation

As discussed below, infra Part III.G.2, the settlement's benefits are adequate and reasonable.

### G. Objections

The three objectors ("Objectors")[1], all represented by the same counsel, filed a joint memorandum of objection, outlining seven objections. See In re Lupron, 228 F.R.D. at 96 (D. Mass. 2005) (citing In re Prudential Ins. Litig., 148 F.3d 283, 318 (3d Cir. 1998) (In assessing the weight of objections to class settlement agreements, the district court may consider that the objectors were persons enlisted by counsel competing for control of the litigation). Taking into account the genesis of the objections and for the reasons stated below, the objections are overruled.

### 1. Class Notice Was Widespread, As Complete As Feasible, and Adequate

Objectors' first and seventh objections target the sufficiency of the notice and the information it provides about the terms of the Agreement and, in particular, the compensation offers. These contentions do not reflect the record.

Notice packets were mailed to 11,718 Settlement Class Members extracted from service and warranty parts data provided by the defendant and as updated by the National Change of Address database. Print publication notice was circulated to an estimated 59.1 million people, and geo-targeted Internet publication was displayed 230 million times. By this process plaintiffs reached an estimated 80.1 percent of adults in the primary distribution states of Connecticut, Georgia, Maryland, Massachusetts, Mississippi, New Hampshire, New York, North Carolina, Pennsylvania, South Carolina, Tennessee, and Virginia. These were reasonable measures to provide notice to the

---

[1] A fourth objection was filed by a third party to ensure it was not included in the Settlement Class. It was settled by assent of the parties at the fairness hearing. See Objection by 84 Lumber Co., Docket # 202; Transcript of Hearing on Settlement Agreement held on October 29, 2014, Docket # 206, pg. 11-12 ("[84 Lumber] is not a class member and [is] not within the class definition.")

class. See Reppert v. Marvin Lumber & Cedar Co., 359 F.3d 53, 56-57 (1st Cir. 2004). As the Objectors offered no evidence showing a feasible alternative for better direct notice, I find that the process used to notify the class was satisfactory under Rule 23.

The notice itself provided Class Members with detailed information regarding this lawsuit, the proposed compensation structure, including the $4 million cap for out-of-warranty and Level 2 damage, as well as an explanation of how individual claim compensation will be calculated, satisfying the adequacy requirements of Rule 23. See In re Compact Disc Minimum Advertised Price Antitrust Litig., 216 F.R.D. 197, 203-04 (D. Me. 2003). The notice refers to the website which provides a calculator to estimate individual recovery. This is more than enough to adequately arm class members to make a judgment of the value of the settlement and decide whether to file claims, opt out, seek exclusion or object.

As for the objection that the claims form is misleading regarding time to file, the objection is overruled. Objectors contend that the phrase: "You must submit your notarized claim by the later of one year from the Effective Date, or the end of the Warranty Period applicable to the window that is the subject of your claim" misleads those with Level 2 damage to windows still in warranty. However, the settlement website will be updated with the exact filing deadlines for Level 2 claims once the effective date is known. This offsets any minimal risk of confusion.

### 2. Adequacy of Compensation

The second objection attacks the adequacy of the compensation provided by the settlement in that the compensation does not cover the "actual real world cost of

replacing a defective window." Memorandum in Support of Objections to Class Settlement ("Obj. Memo."), Docket # 180, pg. 8. This objection is utterly without merit. "A settlement need not reimburse 100% of the estimated damages to class members in order to be fair." In re Celexa, 2014 WL 4446464, at *5 (D. Mass 2014). Indeed, the court should not use the highest award the plaintiffs could have received after full and successful litigation on the claim as a benchmark. See id. (citing Rolland, 191 F.R.D. at 14-15). A settlement allows claimants to recover damages without the difficulty or cost of proving causation at trial, and the Agreement provides adequate compensation in light of the risks and expected costs of this litigation.

The usage and age deductions in the Schedule of Recovery likewise reflect the difficulty of proving causation the longer a window has been installed, and the degree of value already received to the extent class members have had benefit of the use of these windows. Similar logic dictates the comparatively lesser recovery of Out-of-Warranty and Level 2 claimants. Objectors assert that the $4 million aggregate cap on Out-of-Warranty and Level 2 claims is too low, but fail in their calculations to account for the nature of these classes of claimants as suffering lesser damage or having higher factual or legal burdens. In addition, the exclusion of consequential damages is eminently reasonable in light of their exclusion under the terms of defendant's warranties.

Finally, "RS Means" is a long-accepted tool for construction cost calculation, and its use as the starting point for calculating damages is widespread and accepted. See, e.g., In re Louisiana-Pac. Inner-Seal Siding Litig., No. CIV.98 2 03504 1, 2004 WL

1246050, at *6 (D. Or. May 24, 2004) (construction class action settlement used "an independent court-approved supplier of construction cost information, the R.S. Means Company, Inc."). The settlement here uses a custom RS Means calculator that accounts for the costs appropriately. In challenging the calculated amounts, Objectors' expert improperly includes the cost of consequential damages in his calculations of the replacement costs, as addressed above.

### 3. Effect on Warranty Rights

Objectors' third issue is that the Settlement Agreement "unjustifiably eliminates much of the Defendant's pre-existing and future warranty obligations at the expense of injured consumers." Obj. Memo., Docket # 180, pg. 2. While the Agreement does curtail some of the defendant's warranty obligations, it also grants substantial new rights to the class in the form of the claims process and substantial elimination of the proof of causation requirements under the warranty. These rights increase the speed and certainty of recovery and reduce the cost of obtaining it. The terms of the settlement do not *unjustifiably* eliminate warranty obligations. The changes to warranty liability are fair and reasonable compromises, the natural result of hard-fought negotiation, and are not sufficient grounds for disapproval of the Agreement.

### 4. Nature of Claims Process

The fourth objection is that the claims process is unduly burdensome because it requires a notarized signature and does not allow electronic claims submission. While these may slightly depress the claims rate, they are not themselves sufficient reasons to scuttle the Agreement. Objectors cite no authority for the proposition that defendant

is required to allow electronic claim submission, and the notary requirement is, at most, a minor inconvenience to class members. The objection is overruled.

The objection that defendant operates as the initial reviewer of claims is also overruled, given that there is an independent claims reviewer for appeals.

### 5. The Quality of the Settlement Agreements Drafting

Objectors complain that the Settlement Agreement "is poorly drafted and has material provisions that are ambiguous, insufficient, or lacking altogether." Obj. Memo., Docket # 180, pg. 2. There is no merit to this objection.

### 6. Extent of Defects Covered

The Objectors contend the difference between "rot" and "staining, warping or discoloration" is not sufficiently clear in the settlement's terms, because they "fail to define what constitutes visible wood rot." Obj. Memo., Docket # 180, pg. 17. The plain meaning of those terms is clear, however, and no further definition is required beyond the common definitions found in a dictionary.

The Objectors also claim the Settlement Agreement either does not cover damage to the wood frame holding a window, the "wood sashes," or if it does, such inclusion was a change after notice was given. Thus, they argue notice should be reissued. The settlement does include damage to sashes, and that has been made clear on the settlement website that supplements the notice at all times. No new notice is required.

Finally, Objectors protest the third-party releases in the settlement, insofar as they refer to installers of the windows. Their objection misreads the terms of the

settlement in that the release only applies to "the same damage that gave rise to the [class member] receiving a remedy under this Agreement" as against third parties. Class members are still entitled to seek relief for other damage; the release only prevents double recovery for the same damage. These objections are all overruled.

### 7. Miscellaneous Objections

The Objectors raise numerous other objections, see Obj. Mem. Parts 7.A-G, each in roughly two to three sentences. All are overruled.

### H. Allegations of Collusion Between Class Counsel and Defendant

Through a strained reading of the history of pleadings and a string of unsupported inferences, Objectors seek to cast doubt on the legitimacy of the negotiation process. They urge the court to infer that, despite all appearances and sworn declarations by Class Counsel, defense counsel, and Professor and Mediator Eric Green that the negotiations were drawn-out and contentious, this settlement was the product of a "reverse auction" to sell a settlement to the lowest-bidding plaintiff's counsel. There is no support for this contention in the record, and it defies credibility.

### I. Conclusion

The settlement process has been long and hard-fought, proceeding after extensive and contentious discovery. Settlement avoids what would certainly be complex, expensive, and protracted litigation with substantial uncertainty on both sides. Counsel on both sides have considerable experience in this area of the law and all were zealous in their representation of their clients' interests. The negotiations leading to this Agreement were conducted diligently and at arms length with the facilitation of a

respected and experienced neutral mediator. For all of these reasons, I find the Proposed Settlement Agreement to be fair, reasonable, and adequate.

## IV. Final Settlement Class Certification

Plaintiffs seek final certification of a Settlement Class under Rule 23(b)(3) which requires the court to assess (1) whether common questions of law or fact predominate over individual questions; and (2) whether the class action device is superior to other available methods for fairly and efficiently adjudicating the controversy. In re Evergreen Ultra Short Opportunities Fund Sec. Litig., 275 F.R.D. 382, 392-93 (D. Mass. 2011). It is clear that here both requirements are met. The class members all share the common question of alleged design defects in windows produced by defendant, and that question lies at the core of each member's case. Member's cases would "prevail or fail in unison." Amgen Inc. v. Connecticut Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1191 (2013). And, given the difficulties and expense of litigation inherent to this case, a class action is superior to the "piecemeal adjudication of numerous separate lawsuits" where "potential class members with relatively small claims would not have the financial incentive or wherewithal to seek legal redress." In re Transkaryotic Therapies, Inc. Sec. Litig., 2005 WL 3178162, at *10 (D. Mass. 2005). I certify the Settlement Class.

## V. ORDER

For the foregoing reasons, it is ORDERED:

1. The motion for final approval of the class settlement and certification of the Settlement Class (Docket # 196) is ALLOWED and the settlement is APPROVED.

2. The motion by plaintiffs for attorneys' fees, expenses, and incentive awards

(Docket # 188) is ALLOWED.

|  December 29, 2014  | /s/Rya W. Zobel |
|---|---|
| DATE | RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |